# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DONNETTE MARIE H.,[1]                    )
                                         )
              Plaintiff,                 )
                                         )          CIVIL ACTION
v.                                       )
                                         )          No. 19-1099-JWL
ANDREW M. SAUL,                          )
Commissioner of Social Security,         )
                                         )
              Defendant.                 )
_____)

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) consideration of the evidence, evaluation of the medical opinions, or residual functional capacity (RFC) assessment, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.    Background

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff filed an application for DIB on August 14, 2015.  (R. 22, 294).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erroneously failed to consider all the evidence, erred in evaluating the opinion evidence, and did not account in the RFC for all the limitations he found.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

2

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses each issue in the order presented in Plaintiff's Brief.

## II.   Whether the ALJ Considered All the Evidence

Plaintiff argues the ALJ failed to consider the lay opinions of B. Brown, an employee of the SSA, and of Mr. Ream, from whom Plaintiff was receiving training as his administrative assistant.  (Pl. Br. 20-21)  She also argues she submitted a report of a vocational evaluation to the Appeals Council and the court must consider this report "in determining whether substantial evidence supports the ALJ's decision."  Id. at 21 (citing O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994); and 20 C.F.R. § 416.1570(b)[2]).

---

[2] The regulation to which Plaintiff cites is a regulation regarding Supplemental Security Income (SSI), not DIB, and is entitled "Decision by hearing officer."  Footnote 1 in Plaintiff's Brief relates to her citation of this regulation but presents a quotation from 20 C.F.R. § 404.970(b) (2016) which is the DIB regulation identical to 20 C.F.R. § 416.1470(b) (2016).  The court finds this is a typographical error and will consider §§ 404.970(b) and 416.1470(b) when considering this issue.

The Commissioner points out that "there is a 'difference between what an ALJ must consider as opposed to what he must explain in the decision.'" (Comm'r Br. 15) (quoting <u>Mounts v. Astrue</u>, 479 F. App'x 860, 866 (10th Cir. 2012); and citing <u>Blea</u>, 466 F.3d at 914-15). He argues the ALJ stated he considered all the evidence and the court, in line with its general practice, should take him at his word. <u>Id.</u> (citing <u>Flaherty v. Astrue</u>, 515 F.3d 1067, 1071 (10th Cir. 2007)). He argues that the ALJ in fact discussed Mr. Ream's testimony which is all that is required, and that although the ALJ did not mention Mr. Brown, his record "merely reflected a lay person's observations, [which] is not the type of evidence that demanded express inclusion in the ALJ's decision." <u>Id.</u> He argues the reasoning the ALJ relied upon when discounting the lay opinion of Plaintiff's daughter would apply with equal force to the statements of Mr. Brown and Mr. Ream, and any error in failing to restate those reasons was harmless. <u>Id.</u> (citing <u>Best-Willie v. Colvin</u>, 514 F. App'x 728, 736 (10th Cir. 2013)).

The Commissioner argues "the ALJ's decision remains supported by substantial evidence even taking into account the vocational evaluation" presented to the Appeals Council. <u>Id.</u> at 16. He suggests the evaluation was based in large part on Dr. Manguoglu's opinion and the ALJ would have, and the court should discount the evaluation for the same reasons Dr. Manguoglu's opinion was discounted. <u>Id.</u> He concludes that the "vocational evaluation does nothing to undermine the substantial evidence underlying the ALJ's decision." <u>Id.</u> at 17.

## A.    Lay Witness Opinions

In the Tenth Circuit, an ALJ is not required to make specific, written findings regarding each third-party opinion when the written decision reflects that the ALJ considered that opinion.  Blea, 466 F.3d at 914-15; Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996).  There can be no doubt the decision in this case reflects that the ALJ considered Mr. Ream's opinion.  He listed Mr. Ream among those who appeared and testified at the hearing.  (R. 23).  He summarized Mr. Ream's testimony, and he stated he had considered the entire record.  Id. at 25.  More is not required.

The observations of Mr. Brown[3] indicate the claimant had "difficulty" with three of fourteen listed activities—sitting, standing, and walking.  (R. 337).  As the form instructed him to do, he explained his observations: "[Plaintiff] struggled a bit to stand up and walked slowly and slightly hunched over.  She was uncomfortable in her seat, moved around a lot, said her back hurt, and stood up several times."  Id. at 338.  Although the ALJ did not mention Mr. Brown or his observations, he noted numerous times that his decision was made after consideration of all of the evidence.  Id. at 22, 23, 25, 28, 29, 33. As the Commissioner points out, the court's general practice is to take a lower tribunal at its word when it declares it has considered a matter.  (Comm'r Br.15) (citing Flaherty, 515 F.3d at 1071) (see also Hackett, 395 F.3d at 1173 (noting the court saw no reason in that case to depart from the general rule)).  Moreover, the ALJ discounted Plaintiff's

---

[3] The SSA employee who completed the field office Disability Report at issue is identified in the report as B. Brown, as Plaintiff's Brief suggests.  (R. 338).  The Commissioner's Brief refers to the employee as Mr. Brown.  (Comm'r Br. 15).  Although the record does not identify the employee's gender, for convenience the court uses the generic term, Mr. Brown.

allegations concerning the intensity, persistence, and limiting effect of her symptoms because they are not consistent with the other record evidence, and Plaintiff does not allege error in this finding.  (R. 29).  Mr. Brown's observations are just that—his observations of Plaintiff's presentation of herself and her statements at an interview conducted during the process of evaluating her allegations of disability.  The ALJ's failure to discuss Mr. Brown's observations, if it was error, was harmless in light of his consideration of Plaintiff's allegations, the medical evidence, the medical opinion evidence and the opinion of Plaintiff's daughter.  Best-Willie, 514 F. App'x at 736.

### B.   **Evidence Presented to the Appeals Council**

As Plaintiff argues, she presented to the Appeals Council the report of a vocational evaluation performed by a rehabilitation consultant, Mr. Langston.  (R. 2).  The Council found the "evidence does not show a reasonable probability that it would change the outcome of the decision," and it did not make the evidence an exhibit in the administrative record.  Id.  However, the Council noted that it had received other evidence—correspondence from Plaintiff's attorney and arguments provided by Plaintiff's attorney—to which it assigned exhibit numbers and which it made a part of the administrative record.  (R. 5).

In the Appeals Council's notice in which it denied review of the ALJ's decision in this case, it stated the reasons for which it will review an ALJ decision, and noted that it will review a decision if it receives "additional evidence that you show is new, material, and relates to the period on or before the date of the hearing decision.  You must also show there is a reasonable probability that the additional evidence would change the

outcome of the decision." (R. 1). The Council acknowledged the vocational evaluation submitted from Mr. Langston and found "this evidence does not show a reasonable probability that it would change the outcome of the decision." Id. at 2. The court notes that the regulations Plaintiff quoted in footnote 1 of her Social Security Brief, 20 C.F.R. §§ 404.970(b), 416.1470(b) (2016), changed effective January 17, 2017, more than a year-and-a-half before the ALJ's decision in this case and more than two years before the Appeals Council denied review. The Council applied the new regulations, 20 C.F.R. §§ 404.970, 416.1470 (2017, 2018), in denying review.

As Plaintiff argues, and as the Commissioner agrees, the court will consider the new evidence in determining whether substantial evidence in the record supports the ALJ's decision, and the court finds it does. The Council denied review because Mr. Langston's report does not show a reasonable probability of changing the decision. The court finds it has no possibility of changing the outcome of this case.

In his report, Mr. Langston noted that Plaintiff told him her physical limitations. (R. 11-12). He reviewed Plaintiff's education and training, the restrictions Dr. Manguoglu opined on March 16, 2016 after giving injections and after Plaintiff's spinal stimulator was implanted, and Plaintiff's work history. Id. at 12-13. He concluded, "Given the circumstances as presented, I would agree [Plaintiff] is medically and vocationally precluded from competing in the open labor market." Id. at 13. A vocational expert is not qualified to determine what an individual's physical or mental limitations are. That qualification lies with the individual and/or a healthcare professional—Plaintiff and Dr. Manguoglu in this case. The vocational expert's

expertise lies in the ability to evaluate the availability of jobs given an individual's capabilities and limitations. Two of the major sources of information relied upon by Mr. Langston in producing his vocational evaluation, Plaintiff's allegations and Dr. Manguoglu's opinion regarding Plaintiff's capabilities and limitations, were discounted by the ALJ in favor of other evidence in the record. Plaintiff does not argue error in the ALJ's evaluation of her allegations, and the court finds no error in the ALJ's evaluation of the medical opinion evidence in the next section of this decision. Therefore, Mr. Langston's evaluation is left without record support.

Vocational expert "testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." Gay v. Sullivan, 986 F.2d 1336, 1340 (10th Cir. 1993) (citing Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) (quoting Ekeland v. Bowen, 899 F.2d 719, 722 (8th Cir. 1990))). The hypothetical presented to a vocational expert must include all limitations found by the ALJ but need not include all limitations alleged by Plaintiff. Barnett v. Apfel, 231 F.3d 687, 690 (10th Cir. 2000). Because Mr. Langston's evaluation rests upon limitations which do not precisely match Plaintiff's RFC as assessed by the ALJ, his conclusions do not constitute substantial evidence and, therefore, have no possibility of changing the decision below.

## III.    The Medical Opinion Evidence

Plaintiff notes the only medical opinion accorded significant weight by the ALJ was the opinion of Dr. Kwock, the medical expert who testified at the hearing. (Pl. Br. 22). She argues that Dr. Kwock's opinion is not substantial evidence to support the

ALJ's decision because he did not read every line of the medical records and testified that he did not consider the opinions of the other physicians in formulating his medical opinion. (Pl. Br. 22). She argues, "This is in direct conflict with the regulations stating the weight given the opinion is the extent to which all pertinent evidence was considered, including the opinions of the treating physician." Id. (citing 20 C.F.R. § 404.1527(c)(3)). She argues Dr. Kwock stated his opinion was based on two pieces of objective medical evidence from 2013 but ignored more recent evidence. Id. at 22-23.

Plaintiff claims the ALJ erroneously failed to state the weight accorded to the opinions of the state agency medical consultants, Dr. Kaur and Dr. Kindling, and that, in any case their opinions were more than two years old at the time the decision issued and did not have the benefit of reviewing more than two years of medical evidence, and consequently do not constitute substantial evidence to support the decision. Id. at 23 (citing Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995)). Plaintiff claims it was error to "essentially reject," id. at 24, the opinions of Dr. Manguoglu and Dr. Knoll because they are treating physicians and their opinions are worthy of deference. Id. at 25 (citing Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003)). Plaintiff argues, "The ALJ did not consider even most of the regulatory factors and did not give legitimate reasons for rejecting Dr. Knoll and Dr. Manguoglu's opinions." Id. at 26. Finally, Plaintiff argues the ALJ relied on his own "medical expertise" and a selective reading of the treatment records to discount the treating physicians' opinions. Id. at 27-28.

The Commissioner argues the ALJ properly considered the medical opinions. (Comm'r Br. 7). He argues the ALJ explained his reasoning regarding the weight

accorded each opinion.  He argues the ALJ agreed with Dr. Knoll's lifting and carrying limitations and properly accorded only limited weight to the remainder of her opinion. (Comm'r Br. 8).  He argues that contrary to Plaintiff's argument, the ALJ considered the regulatory factors for weighing medical opinions but he "is not required to 'apply expressly' every relevant factor when weighing opinion evidence."  Id. at 9 (quoting Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007)).  He argues that RFC is an administrative finding within the province of the ALJ and that Plaintiff's appeal to evidence supporting a contrary weighing of the medical opinions "reflect a wish that the ALJ had weighed the evidence differently."  Id. at 9-10.

The Commissioner argues that the ALJ provided reasons for discounting Dr. Manguoglu's opinions which are supported by the record evidence.  Id. at 10-12.  He argues that, contrary to Plaintiff's argument, Dr. Kwock explained his evaluation of the record evidence and that evaluation was adequate, supported by, and consistent with the record evidence.  Id. at 12-13.  Finally, he argues that Plaintiff's allegation of error in the ALJ's evaluation of the opinions of Dr. Kaur and Dr. Kindling elevates form over substance and the decision allows the court to follow the ALJ's reasoning and determine he properly weighed those opinions also.  Id.  at 13-14.

### A.    Standard for Weighing Medical Opinions

For claims filed before March 17, 2017, "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis."  20 C.F.R. § 404.1527(a)(2).  Such opinions may

11

not be ignored and, unless a treating source opinion[4] is given controlling weight, <u>all</u> medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations.  <u>Id.</u> § 404.1527(c); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2019).  A physician who has treated a patient frequently over an extended period (a treating source) is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." <u>Doyal v. Barnhart</u>, 331 F.3d 758, 762 (10th Cir. 2003).  But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." <u>Id.</u> at 763 (citing <u>Reid v. Chater</u>, 71 F.3d 372, 374 (10th Cir. 1995)).  However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record.  <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004); <u>Talbot v. Heckler</u>, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing <u>Broadbent v. Harris</u>, 698 F.2d 407, 412 (10th Cir. 1983), <u>Whitney v. Schweiker</u>, 695 F.2d 784, 789 (7th Cir. 1982), and <u>Wier ex rel. Wier v. Heckler</u>, 734 F.2d 955, 963 (3d Cir. 1984)).

---

[4]The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. § 404.1502 (2016).

"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  <u>Id.</u>

"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  <u>Id.</u>

If a treating source opinion is not given controlling weight, the inquiry does not

end.  Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).  A treating source

opinion is "still entitled to deference and must be weighed using all of the factors

provided in 20 C.F.R. § 404.1527."  Id.  Those factors are:  (1) length of treatment

relationship and frequency of examination; (2) the nature and extent of the treatment

relationship, including the treatment provided and the kind of examination or testing

performed; (3) the degree to which the physician's opinion is supported by relevant

evidence; (4) consistency between the opinion and the record as a whole; (5) whether or

not the physician is a specialist in the area upon which an opinion is rendered; and

(6) other factors brought to the ALJ's attention which tend to support or contradict the

opinion.  Id. at 1301; 20 C.F.R. § 404.1527(c)(2-6); see also Drapeau v. Massanari, 255

F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52

F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the

weight he gives the treating source opinion.  Id. 350 F.3d at 1301.  "Finally, if the ALJ

rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing

so."  Id.  (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v.

Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

### B.     The ALJ's Evaluation

The ALJ recognized that Dr. Knoll and Dr. Manguoglu each provided two written

opinions regarding Plaintiff's capabilities and limitations.  (R. 31-33).  The ALJ first

discussed Dr. Knoll's report of her consultative physical examination on June 23, 2017,

agreeing with Dr. Knoll's lifting and carrying restrictions but finding her standing and walking restrictions to three hours and two hours at a time, respectively, were internally "inconsistent with her other notation that the claimant could not stand/walk for prolonged periods." (R. 31). He also found her upper extremity manipulative restrictions "inconsistent with Dr. Knoll's unremarkable exam findings, which included normal ranges of motion, 5/5 bilateral grip strength, intact dexterity, no joint effusion or tenderness, and 5/5 upper strength." Id. at 32 (citing R. 631-33). He accorded only limited weight to Dr. Knoll's June 2017 opinion and "greater weight to the testimony and opinion of medical expert, Dr. Kwock." Id. He accorded no weight to Dr. Knoll's September 2017 opinion that Plaintiff has substantial functional limitations in mobility resulting in disability which is severe and chronic and likely to continue indefinitely. Id. He discounted the opinion "because it is conclusory, provides no explanation of the impairments or their specific limitations, and intrudes into an area reserved to the Commissioner." Id. He also noted that this disability certification was required for continued participation in Plaintiff's work-training, suggesting "that she has made acceptable progress, and retains the ability to function within the workplace." Id. at 33.

The ALJ discussed Dr. Manguoglu's December 2015 neurological examination and his March 16, 2016 response to questions submitted by Plaintiff's attorney, in both of which he opined that Plaintiff is permanently and totally disabled from employment. (R. 547, 578). The ALJ accorded only limited weight to these opinions, discounting them because they are on an issue reserved to the Commissioner, are conclusory, with little explanation or functional limitations and are not supported by Plaintiff's daily activities

or by subsequent examinations.  (R. 32).  Dr. Manguoglu also completed a Physical RFC

assessment form on September 9, 2016.  (R. 585-92).  The ALJ agreed

> that the claimant retains the ability to complete a full 8-hour workday, and
> that she would not require any manipulative, visual, communicative and
> environmental restrictions, [but found] the balance of Dr. Manguoglu's
> assessment, is not supported by objective examination findings.  Indeed, an
> MRI of the claimant's lumbar spine performed in 2017 revealed mild-to-
> moderate multi-level degenerative disc disease without central canal
> stenosis, and a disc extending in the left neural foramen at the level of L4-5
> causing only moderate left neural foraminal stenosis (Exhibit 14F at 13).
> Accordingly, the undersigned has given only partial weight to this opinion.

(R. 32).  the ALJ explained his evaluation of Dr. Kwock's opinion:

> In making this finding, the undersigned considered the opinion of board
> certified orthopedic surgeon/medical expert, John Kwock, M.D., who
> testified that with consideration of the claimant's history of right hand
> fracture which is resolved, her status post-bilateral tarsal tunnel release, and
> her degenerative disc and joint disease of the lumbar spine status post-pain
> stimulator implant did not rise to the level of a listing, either singularly or
> in combination.  Further, Dr. Kwock opined that as a result of her
> conditions the claimant retained the ability to perform light level work, with
> lifting and carrying up to 20 pounds occasionally, and 10 pounds
> frequently, while standing and/or walking 6 hours, and sitting 6 hours, with
> a need for postural restrictions, such as climbing ramps/stairs,
> ladders/scaffolds frequently; occasionally stooping and crouching,
> frequently kneeling and continuously balancing.  Further, he concluded that
> the claimant required no handling, fingering or environmental limitations.
> Based upon the claimant's overall record, including objective medical
> evidence and hearing testimony regarding her current work related
> activities, as well as Dr. Kwock's medical expertise, and familiarity with
> the applicable standards of the listed impairments, the undersigned has
> given significant weight to Dr. Kwock's opinions (Exhibit 16F).

(R. 33).

Finally, the ALJ explained his consideration of the opinions of Dr. Kaur and Dr.

Kindling, the state agency medical consultants who opined after reviewing the record at

the initial and reconsideration levels respectively.  He stated he agreed with their opinions

that Plaintiff has "the ability to perform light work, and requires postural restrictions," but he gave "greater weight to Dr. Kwock's assessment, because it benefitted from a review of the overall record, including Dr. Knoll's exam findings, and the claimant's subsequent treatment records." (R. 34).

### C.   Analysis

Plaintiff argues that the ALJ should not have accorded so much weight to Dr. Kwock's opinion and should have accorded greater weight to the opinions of the treating physicians—Dr. Manguoglu and Dr. Knoll.  But Plaintiff does not demonstrate that the evidence or the legal standard compels such a finding.  She attempts to do so by arguing that Dr. Kwock did not read every line of the record medical evidence and did not consider the other physicians' opinions when formulating his opinion, and the regulations require him to do so.  She also argues Dr. Kwock based his opinion on only two pieces of objective evidence.

The regulations do not compel a medical expert to read every line of the medical evidence or to consider any other physician's opinion when formulating his opinion.  The regulations provide that an ALJ may

> ask for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether your impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart. When administrative law judges consider these opinions, they will evaluate them using the rules in paragraphs (a) through (d) of this section.

20 C.F.R. § 404.1527(e)(2)(iii) (2016).  The Supreme Court long ago held there is nothing unconstitutional or improper in the use of a medical expert, who explains medical problems in terms understandable to the layman-ALJ and offers his own opinion of a

claimant's condition.  Perales, 402 U.S. at 408.  A medical expert is a physician qualified to consider the evidence and reach a medical judgment therefrom.  Therefore, he may review the available evidence in the manner his expertise deems most useful in reaching a medical judgment.  The regulation to which Plaintiff appeals explains how the SSA will weigh medical opinions.  20 C.F.R. § 404.1527(c) (2018) ("How we weigh medical opinions").  Subparagraph (c)(3) explains how the SSA will use the factor of supportability in weighing medical opinions.  As Plaintiff's Brief suggests, it explains in part, "We will evaluate the degree to which these medical opinions consider all of the pertinent evidence in your claim, including medical opinions of treating and other examining sources."  Id. 20 C.F.R. § 404.1527(c)(3) (2018).  The regulation applies to the agency's evaluation of medical opinions and does not require a physician to formulate his opinion in a particular manner.  It requires only that the agency (the ALJ in this case) use the five factors in paragraph (c) of § 404.1527 when weighing a physician's medical opinion.

Under the law and regulations, the effect of Plaintiff's argument is that the ALJ should have discounted Dr. Kwock's opinion because he admittedly did not include the other physician's opinions when formulating his own opinion.  But that is not what is required.  What is required is, as discussed above, to evaluate each medical opinion in accordance with the regulatory factors for evaluating medical opinions and to explain the weight accorded each.  If the ALJ's evaluation is supported by substantial evidence— such relevant evidence as a reasonable mind might accept as adequate to support a conclusion—the court must affirm the evaluation.  That standard is met here.  That Dr.

17

Kwock's opinion was not based on the opinions of the other physicians is of no import,

the ALJ already had the other medical opinions.  What he got was a medical opinion

purportedly based on all the objective medical evidence in the record.  (R. 79) ("sufficient

objective evidence"); (R. 81-83) (Dr. Knoll's report of examination, Ex. 15F); (R. 83)

(Dr. Manguoglu's report, Ex. 13F); (R. 84) (nerve conduction study, March 7, 2016, Ex.

14F/10); (R. 85) (EMG, March 2016); (R. 93-94) (Lumbar spine x-rays, Lumbar spine

MRI, September, 2013); (R. 95) (MRI lumbar spine, November 3, 2015, Ex. 7F); (R.

109) (four radiological studies of the lumbar spine); (R. 110) (lumbar spine CT scan,

February 2017); (R. 116) ("I reviewed the entire record, that consisted of 1-F down

through 16-F.").  Plaintiff's argument that Dr. Kwock's opinion was based on two pieces

of evidence from 2013 and ignored more recent evidence is false as demonstrated by the

evidence noted above as discussed in the hearing transcript.  Moreover, as quoted supra at

15, the ALJ explained why he accorded significant weight to Dr. Kwock's opinion and

his reasons are supported by the record evidence.

Plaintiff's argument that the ALJ did not state the weight accorded the opinions of

Dr. Kaur and Dr. Kindling is also without merit.  Although the ALJ did not state he gave

"some weight," "little weight," "limited weight," "great weight," "partial weight," or

some other label to the weight he accorded the state agency medical consultants'

opinions, he explained that he accepted their opinions that Plaintiff can perform light

work and requires postural limitations, but in assessing Plaintiff's precise limitations he

accorded "greater weight to Dr. Kwock's assessment, because it benefitted from a review

of the overall record, including Dr. Knoll's exam findings, and the claimant's subsequent

treatment records." (R. 34). The ALJ stated the weight accorded these physicians' opinions and more is not required. Plaintiff's argument that these opinions do not constitute substantial evidence because they were more than two years old at the time of the ALJ's decision and did not review more than two years of medical evidence also misses the significance of the ALJ's reasons for according greater weight to Dr. Kwock's opinion and misses that it is the ALJ's duty to review the evidence and assess a current RFC. Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004) ("the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."); McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) ("the ALJ's RFC assessment is an administrative, rather than a medical determination").

Plaintiff's citation to Frankl, 47 F.3d at 938 does not require a different result. Although Frankl is an Eighth Circuit case which is not binding on this court and it would be much better for Plaintiff to cite to Tenth Circuit law, it appears in this case that Eighth Circuit law is consistent with Tenth Circuit law and the court will address the case. In Frankl, the ALJ's hearing was held in December 1991. Frankl, 47 F.3d at 936. The ALJ's RFC relied on medical records from August and September 1990, but the court noted "the medical evidence demonstrates that Frankl's condition deteriorated after September 1990." Id. at 938. Here, Plaintiff does not argue and the medical evidence does not demonstrate significant deterioration subsequent to the record evidence upon which Dr. Kwock based his opinion and upon which the ALJ relied.

The remainder of Plaintiff's arguments regarding the medical opinions essentially asks the court to reweigh the evidence and substitute its judgment for that of the ALJ. It

may not do so.  Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

## IV.    RFC Limitations for All Severe Impairments

In her final argument, Plaintiff points out that the ALJ found at step two of the sequential evaluation process that Plaintiff has severe impairments including "history of hand fracture, and post-bilateral tarsal tunnel release," and that a severe impairment is one which significantly limits one's ability to perform basic work activities.  (Pl. Br. 28). Consequently, she argues that the ALJ erred when he failed to include RFC limitations accounting for a severe hand impairment and he "did not adequately limit [her] ability to walk and/or stand" when he assessed her with the ability to stand and walk six hours in a workday.  Id.  She cites Givens v. Astrue, 251 F. App'x. 561, 567 (10th Cir. Oct. 18, 2007) for the proposition that an ALJ is "required to at least explain why a 'severe' impairment at step two would result in no limitations at step four."  Id.

The Commissioner argues that the RFC limitations assessed "at least partially address issues relating to pain or weakness in an individual's extremities," and that the

ALJ explained "the several reasons the ALJ concluded that further limitations were unwarranted." (Comm'r Br. 5-7). Plaintiff responds that the ALJ did not attribute the light work RFC limitations to her hand and foot limitations and in a footnote suggests the Commissioner's arguments are post-hoc rationalizations which the court should not consider. (Reply Br. 10, n.6) (citing Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 169 (1962); Sec v. Chenery Corp., 318 U.S. 80, 94-95 (1943); Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005); Robinson, 366 F.3d at 1084; Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004)).

As Plaintiff suggests, the ALJ found that Plaintiff's severe impairments included "history of hand fracture, and post-bilateral tarsal tunnel release." (R. 25) (finding no. 3, bold omitted). A "severe" impairment at step two of the sequential evaluation processing within the meaning of the Act and regulations is defined as an impairment which would have more than a minimal effect on her ability to do basic work activities. Williams, 844 F.2d at 751. "Basic work activities" are abilities and aptitudes necessary to do most jobs, including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1522(b)(1) (2018). These are precisely the activities which the ALJ inherently found limited when he limited Plaintiff to light exertional work. He limited walking and standing to a total of six hours in a workday and he limited lifting, pushing, pulling, reaching, carrying, or handling to an exertional force of 20 pounds occasionally (one-third or less of a workday) and 10 pounds frequently (two-thirds or less of a workday). (R. 28). This is a substantial reduction in the basic ability to work when one considers that work beyond Plaintiff's

assessed abilities includes medium work which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds" up to very heavy work which "involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more."  20 C.F.R. § 404.1567 (2018).  Although the ALJ did not specifically state that these limitations were assessed because of Plaintiff's history of hand fracture and status-post bilateral tarsal tunnel release, it is clear they entered into the consideration and provide accommodation related to those impairments.  As the Commissioner argues, the ALJ also included discussion in his decision explaining the bases for the RFC he assessed. Importantly, the ALJ discounted Plaintiff's allegations of symptoms as inconsistent with the medical evidence and other evidence of record, and Plaintiff argues no error in that finding.  (R. 29).  The ALJ recognized Plaintiff's report that she would be able to work "just fine" after recovery from her hand fracture and after occupational therapy she demonstrated a full range of motion in her hand.  Id.  The ALJ relied upon Dr. Kwock's testimony that after tarsal tunnel release "ambulation or weight bearing ability would not be impacted" (R. 31), and that Plaintiff's history of right-hand fracture was resolved.  (R. 33).  The ALJ relied upon Dr. Knoll's findings of "normal ranges of motion, 5/5 bilateral grip strength, intact dexterity, no joint effusion or tenderness, and 5/5 upper strength." Id. at 32.  The ALJ explained his conclusion that although Plaintiff has severe physical impairments, "the medical evidence discussed above indicates that these conditions are generally well controlled.  The undersigned is certainly not persuaded that the claimant's impairments preclude the performance of activities consistent with the residual functional

22

capacity established in this decision." Id. at 33.  Most importantly, although she argues that the RFC assessed does not account for these impairments, Plaintiff points to no record evidence compelling an exertional or manipulative limitation greater than any limitation included in the RFC assessed.

Plaintiff's suggestion that the Commissioner's appeal to evidence in the record which supports the RFC assessed is post hoc rationalization is without merit.  The Commissioner's argument does not provide an additional or new rationale for the ALJ's decision.  Rather, he merely points to record evidence (most, if not all, of which was discussed in the ALJ's decision) which supports the RFC assessed by the ALJ.  Plaintiff has shown no error.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated August 13, 2020, at Kansas City, Kansas.


s:/  John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**